Case 2:10-cv-03536-AB   Document 16   Filed 01/18/12   Page 1 of 13

## IN THE UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| BRIAN BRAHENY, | : | |
| Plaintiff, | : | |
| | : | CIVIL ACTION |
| v. | : | |
| | : | NO. 10-3536 |
| COMMONWEALTH OF | : | |
| PENNSYLVANIA, et al., | : | |
| Defendants. | : | |

## EXPLANATION AND ORDER

## I. INTRODUCTION

Plaintiff Brian Braheny brings suit against the Commonwealth of Pennsylvania alleging discrimination in violation of the Rehabilitation Act ("RA"), 29 U.S.C. § 794 *et seq.*, and David Diguglielmo, in his official capacity as the Superintendent at the State Correctional Institution at Graterford ("Graterford"), alleging discrimination in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*  Braheny alleges that during his employment by the Pennsylvania Department of Corrections ("PDOC") as a corrections officer at Graterford, Defendants failed to accommodate his disability in violation of federal law.  Defendants move for summary judgment on all claims.

Braheny suffers from a condition known as Lymphocytic Colitis ("colitis"), the main symptom of which is uncontrollable diarrhea.  As a result of his colitis, Braheny submitted a Request For Accommodation Form to the PDOC, requesting job assignments with ready access to a bathroom.  The PDOC denied his request.  Braheny continued to work at Graterford without an accommodation; however, his attendance slipped.  The PDOC eventually terminated Braheny

1

Case 2:10-cv-03536-AB   Document 16   Filed 01/18/12   Page 2 of 13

for unacceptable attendance.

## II. LEGAL STANDARD

Summary judgment will be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it "might affect the outcome of the suit under the governing law . . . ." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A factual dispute is "genuine" if the evidence would permit a reasonable jury to return a verdict for the nonmoving party. *Id.*

The moving party bears the initial burden of demonstrating that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The nonmoving party must then "make a showing sufficient to establish the existence of [every] element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322. In ruling on a motion for summary judgment, the court must draw all inferences from the facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). However, the nonmoving party may not "rely merely upon bare assertions, conclusory allegations or suspicions" to support its claims. *Fireman's Ins. Co. of Newark, N.J. v. DuFresne*, 676 F.2d 965, 969 (3d Cir. 1982).

In essence, the inquiry at summary judgment is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52.

## III. DISCUSSION

Defendants move for summary judgment because they contend that Braheny cannot establish a prima facie case of disability discrimination. To establish a prima facie case of

2

Case 2:10-cv-03536-AB   Document 16   Filed 01/18/12   Page 3 of 13

discrimination a plaintiff must show: "(1) he is a disabled person within the meaning of the ADA; (2) he is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations by the employer; and (3) he has suffered an otherwise adverse employment decision as a result of discrimination." *Gaul v. Lucent Techs., Inc.*, 134 F.3d 576, 580 (3d Cir. 1998) (ADA claim); *accord Shiring v. Runyon*, 90 F.3d 827, 831 (3d Cir. 1996) (applying same prima facie elements to a claim under the RA).[1]  Defendants assert that Braheny cannot demonstrate any element of his prima facie case.

### A.  Is Braheny a Disabled Person?

The ADA defines a disability as: "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment . . . ."  42 U.S.C. § 12102(2).[2]  Braheny alleges

---

[1] "The Rehabilitation Act expressly makes the standards set forth in the 1990 Americans with Disabilities Act, 42 U.S.C. § 12101 et seq., applicable to federal employers and to employers receiving federal funding." *Wishkin v. Potter*, 476 F.3d 180, 184 (3d Cir. 2007) (citing 29 U.S.C. § 791(g)).  The RA is applicable to the Commonwealth of Pennsylvania because the Commonwealth and its Corrections Department receive federal funding.  For convenience I will refer only to the ADA; however, because the requirements of these claims are identical, my analysis is equally applicable to Braheny's RA claim.

[2] I recognize that amendments to the ADA took effect on January 1, 2009.  *See* ADA Amendments Act of 2008, Pub. L. 110-235, 122 Stat. 3553 (2008).  However, I refer to the law as it existed prior to the amendments because the events giving rise to Braheny's claims occurred prior to when the amendments became effective, and neither party contends that the amendments should apply to this case.  *See Sulima v. Tobyhanna Army Depot*, 602 F.3d 177, 185 n.2 (3d Cir. 2010) (applying the ADA and its regulations as they existed prior to the ADA Amendments Act where the parties did not argue that the amendments had retroactive effect).  Additionally, I decline to retroactively apply the amendments because the Court of Appeals for the Third Circuit has stated, albeit in a not precedential opinion, that the amendments cannot be applied retroactively.  *Britting v. Sec'y, Dep't of Veteran Affairs*, 409 Fed. Appx. 566, 569 (3d Cir. 2011) (not precedential).  Moreover, it has also recognized that all other circuit courts that have reached the issue "have uniformly concluded that the ADAAA is not retroactively applicable."  *Id.* at 569 n.3 (citing *Ragusa v. Malverne Union Free Sch. Dist.*, 381 Fed. Appx. 85, 87 n.2 (2d Cir. 2010);

that his colitis qualifies as a disability under subsection A.  Defendants do not appear to argue

that Braheny's colitis was not an impairment.  Rather, they argue that Braheny's colitis did not

substantially limit a major life activity.  Braheny asserts that the major life activity affected by his

colitis is his ability to eliminate waste from his body.  The Third Circuit has already held that

elimination of waste from the blood is a major life activity.  *Fiscus v. Wal-Mart Stores, Inc.*, 385

F.3d 378, 385 (3d Cir. 2004); *accord Heiko v. Colombo Sav. Bank, F.S.B.*, 434 F.3d 249, 251

(4th Cir. 2006) (holding that elimination of bodily waste is a major life activity).  Additionally,

the Sixth Circuit has expressly held that waste elimination, specifically the ability to control

one's bowels, can be a major life activity.  *Workman v. Frito-Lay, Inc.*, 165 F.3d 460, 467 (6th

Cir. 1999).  This precedent sufficiently establishes that waste elimination is a major life activity.

Thus, the only remaining question is whether Braheny's colitis substantially limited his ability to

eliminate waste.

The EEOC regulations define "substantially limits" as follows:

"(i) Unable to perform a major life activity that the average person in the general population can perform; or (ii) Significantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity."

*Taylor v. Phoenixville Sch. Dist.*, 184 F.3d 296, 307 (3d Cir. 1999) (quoting 29 C.F.R. §

1630.2(j)(1)).  Although Braheny is able to eliminate waste, when symptomatic he suffers from

---

*Nyrop v. Indep. Sch. Dist. No. 11*, 616 F.3d 728, 734 n.4 (8th Cir. 2010); *Thornton v. United Parcel Serv., Inc.*, 587 F.3d 27, 34 n.3 (1st Cir. 2009); *Becerril v. Pima Cnty. Assessor's Office*, 587 F.3d 1162, 1164 (9th Cir. 2009); *Fredricksen v. United Parcel Serv.*, 581 F.3d 516, 521 n.1 (7th Cir. 2009); *Lytes v. DC Water & Sewer Auth.*, 572 F.3d 936, 940-42 (D.C. Cir. 2009); *Milholland v. Sumner Cnty. Bd. of Educ.*, 569 F.3d 562, 565-67 (6th Cir. 2009); *EEOC v. Agro Distribution, LLC*, 555 F.3d 462, 469 n.8 (5th Cir. 2009).

Case 2:10-cv-03536-AB   Document 16   Filed 01/18/12   Page 5 of 13

completely "uncontrollable diarrhea," and has gone through periods in which he has needed to go to the bathroom between thirty and sixty times a day. Pl.'s Ex. 1, at 20, 34. Additionally, his colitis resulted in "several accidents at work." Pl.'s Ex. 3. While Braheny's colitis is now under much better control and flare ups occur with much less frequency than they did while Braheny was employed as a corrections officer, his "daily routine in general, every single day revolves around [his] condition." Pl's Ex. 1, at 111. A reasonable jury could conclude that Braheny is "[s]ignificantly restricted as to the condition, manner or duration" under which he can eliminate waste "as compared to the condition manner, or duration under which the average person in the general population" eliminates waste. *Taylor,* 184 F.3d at 307 (internal quotation marks omitted). Therefore, a genuine issue of material fact exists as to whether Braheny is disabled.

### B. Is Braheny Qualified to Perform the Essential Functions of the Job?

Whether a person is qualified to perform the essential functions of the employment position is a two part inquiry: "(1) whether the individual has the requisite skill, experience, education and other job-related requirements of the position sought, and (2) whether the individual, with or without reasonable accommodation, can perform the essential functions of that position." *Turner v. Hershey Chocolate USA,* 440 F.3d 604, 611 (3d Cir. 2006) (citing 29 C.F.R. § 1630.2(n)). Defendants appear to concede that Braheny has met the first part of the inquiry. However, they argue that Braheny was not qualified because he could not perform an essential function of the job–the requirement that he have the ability to work all posts without advance notice. As a corrections officer, Braheny's job post changed daily. Each day Braheny would be assigned to a different duty when he reported to work. Because Braheny stated that he could not work posts in which a bathroom was not easily accessible, Defendants argue that he

5

Case 2:10-cv-03536-AB   Document 16   Filed 01/18/12   Page 6 of 13

was unable to work all posts without advance notice.

"Whether a job duty is an 'essential function' turns on whether it is 'fundamental' to the employment position." *Id.* at 612 (citing 29 C.F.R. § 1630.2(n)(l)).  For the following reasons, but not limited to them, a job may be considered essential:

> "(i) The function may be essential because the reason the position exists is to perform that function;
>
> (ii) The function may be essential because of the limited number of employees available among whom the performance of that job function can be distributed; and/or
>
> (iii) The function may be highly specialized so that the incumbent in the position is hired for his or her expertise or ability to perform the particular function."

*Id.* (quoting 29 C.F.R. § 1630.2(n)(2)).  While these reasons are not the only ones that may be considered, none of them support a finding that the ability to work all posts without advance notice is necessarily an essential function.

The following nonexhaustive list of types of evidence is designed to help a court determine whether a function is essential:

> "(i) The employer's judgment as to which functions are essential;
>
> (ii) Written job descriptions prepared before advertising or interviewing applicants for the job;
>
> (iii) The amount of time spent on the job performing the function;
>
> (iv) The consequences of not requiring the incumbent to perform the function;
>
> (v) The terms of a collective bargaining agreement;
>
> (vi) The work experience of past incumbents in the jobs; and/or
>
> (vii) The current work experience of incumbents in similar jobs."

6

*Skerski v. Time Warner Cable Co., a Div. of Time Warner Entm't Co., L.P.*, 257 F.3d 273, 279

(3d Cir. 2001) (quoting 29 C.F.R. § 1630.2(n)(3)).  Defendants have produced a Generic

Essential Job Functions list for corrections officers from 1997 that lists as an essential function

that a corrections officer "[m]ust be able to work all posts without advance notice."  Pl.'s Ex. 22.

While this first factor may be an important consideration, "the employer's judgment as to which

functions are essential-is but one piece of evidence to be considered by the trier of fact," and

standing alone is not determinative.  *Turner,* 440 F.3d at 613 n.6.  Weighing against this

evidence is the admission by Jennifer Haas, the Director of the Bureau of Human Resources for

the PDOC, that a modified duty program exists for employees with temporary injuries, and that

there have been situations in institutions other than Graterford where a corrections officer has

been given a temporary modified duty that did not require working all posts.  Pl.'s Ex. 24, at 23-

27.

      Moreover, Jennifer Haas has provided the following explanation as to why ability to work

all posts without advance notice is essential:

> We spend a lot of time planning for things that we hope don't happen, like fights,
> like staff assaults, like disturbances, like hostage situations, like, hopefully never,
> riots.  With that in mind, we need to always know that all of our officers can be
> redeployed to any post at any time, that if something happens we can say, you
> know, Officer A, you need to go to the yard now, and, you know, Officer B, you
> need to relieve, you know, Officer C.  We have to know that everyone can do all
> of the jobs in the institution at all times in order to run the institution safely and
> securely.

Pl.'s Ex. 24 p. 31-32.  Based on this explanation, Braheny asserts that the essential job function is

not the ability to work all posts without advance notice, but rather the ability to work all posts

without advance notice in the event of emergency.  According to Braheny, he was unable to

Case 2:10-cv-03536-AB   Document 16   Filed 01/18/12   Page 8 of 13

continually work in positions without ready access to the bathroom; however, he had no problem working any post during an emergency. This assertion is supported by his declaration in which he states that he was able to fill any post in an emergency. *See* Pl.'s Ex. 3. Although Braheny did write in his Request for Accomodation Form: "Cannot work in areas of facility or duty assignments that do not allow easy and ready access to lavatory facilities," Pl.'s Ex. 9, Defendants never followed up with Braheny as to what he meant by this statement. If working all posts in the event of an emergency is the essential function, given Braheny's declaration that he could work any post in an emergency, there is a genuine issue of material fact as to whether Braheny could perform this function. Additionally, if Defendants continue to maintain that the essential function is the ability to work all posts without notice even in non-emergency situations, there remains a genuine issue of fact as to whether this requirement is essential. Thus, a reasonable jury could conclude that Braheny is qualified to perform the essential functions of the job.

### C.  Has Braheny Suffered an Adverse Employment Action?

Defendants contend that Braheny was not terminated because of his disability; therefore, he did not suffer an adverse employment action. Braheny asserts that Defendants failure to accommodate him is the adverse employment action. Braheny is correct that "[a]dverse employment decisions . . . include refusing to make reasonable accommodations for a plaintiff's disabilities." *Williams v. Phila. Hous. Auth. Police Dep't*, 380 F.3d 751, 761 (3d Cir. 2004). Under the ADA, "an employer discriminates against a qualified individual with a disability when the employer does 'not mak[e] reasonable accommodations to the known physical or mental limitations of the individual unless the [employer] can demonstrate that the accommodation

would impose an undue hardship on the operation of the business of the [employer].'" *Taylor*, 184 F.3d at 306 (alteration in original) (quoting 42 U.S.C. § 12112(b)(5)(A)). "Reasonable accommodation further includes the employer's reasonable efforts to assist the employee and to communicate with the employee in good faith, under what has been termed a duty to engage in the interactive process . . . ." *Williams*, 380 F.3d at 761 (citation omitted) (internal quotation marks omitted).

Braheny alleges that Defendants discriminated against him by (1) failing to provide him with his requested reasonable accommodation; and (2) failing to engage in good faith in the interactive process. "Generally, the question of whether a proposed accommodation is reasonable is a question of fact." *Buskirk v. Apollo Metals*, 307 F.3d 160, 170 (3d Cir. 2002). If a jury concludes that Braheny was disabled and qualified for his job, then it could also find that Defendants failure to assign him to posts with ready access to a bathroom was a failure to reasonably accommodate him. As for a failure to engage in good faith in the interactive process, an employee can demonstrate that its employer breached this duty by showing:

> 1) the employer knew about the employee's disability; 2) the employee requested accommodations or assistance for his or her disability; 3) the employer did not make a good faith effort to assist the employee in seeking accommodations; and 4) the employee could have been reasonably accommodated but for the employer's lack of good faith.

*Taylor*, 184 F.3d at 319-20. Here, there is no dispute that Defendants knew about Braheny's disability and that he requested accommodation. Additionally, as discussed *supra*, if a trier of fact concludes Braheny is disabled and qualified for his job, a genuine issue of material fact exists as to whether he could have been reasonably accommodated. Thus, the only real issue is whether Defendants made a good faith effort to help Braheny devise an accommodation.

Case 2:10-cv-03536-AB   Document 16   Filed 01/18/12   Page 10 of 13

According to the Third Circuit:

> Employers can show their good faith in a number of ways, such as taking steps like the following: meet with the employee who requests an accommodation, request information about the condition and what limitations the employee has, ask the employee what he or she specifically wants, show some sign of having considered employee's request, and offer and discuss available alternatives when the request is too burdensome.

*Taylor*, 184 F.3d at 317.  While there is no formula that dictates what is required of an employer to interact in good faith, the Third Circuit has admonished that "employers take seriously the interactive process," *Williams*, 380 F.3d at 772 n.16, and has refused to grant summary judgment for a defendant where the employer has not clearly engaged in good faith in the interactive process.  For instance, in *Deane v. Pocono Medical Center*, the Third Circuit reversed the district court's grant of summary judgment to the employer, explaining that "the single telephone interaction" between the employee and employer "hardly satisfies our standard that the employer make reasonable efforts to assist the employer, to communicate with him in good faith, and to not impede his investigation for employment." 142 F.3d 138, 149 (3d Cir. 1998) (internal quotation marks omitted).

On three separate occasions in September 2005, September 2006, and December 2006, Braheny requested the accommodation of being placed in posts with ready access to a bathroom.  It was not until after Braheny made a third request that Defendants responded.  The PDOC's ADA Committee, the final arbiter as to whether or not to grant an accommodation, wrote a letter to Braheny asking him to identify the duty assignments that he could not perform because there was no easy access to a bathroom.  Braheny sent a list to Defendants, and shortly after he received a letter informing him that his accommodation request was denied because it

"prohibit[s] you from performing the essential job duties of your position for which you were hired." Pl.'s Ex. 14.  Although it was the policy of the ADA Committee to get feedback from an employee's supervisor when making an accommodation decision, the ADA Committee received no feedback from Braheny's supervisor.  In fact, in making its accommodation decision, the ADA Committee never spoke with Braheny, with anyone who worked at Graterford, or with Braheny's doctor or other medical professionals.  Pl.'s Ex. 11, at 30, 31; Pl.'s Ex. 23, at 43, 44. It is doubtful that Defendants engaged in good faith in the interactive process when the only thing they did was engage in a single letter exchange between Defendants and Braheny, on the limited issue of which posts did not have easy access to a bathroom, before deciding to deny his accommodation request.  This is hardly surprising given that the neither the ADA coordinator nor the ADA Committee had received any training on the ADA, and the ADA coordinator had never heard of the term interactive process. Pl.'s Ex. 11, at 28, 29, 33.

Based on the foregoing discussion, a genuine issue of fact exists as to whether Defendants failed to reasonably accommodate Braheny.

## IV.  CONCLUSION

For the reasons set forth above, Defendants' Motion for Summary Judgment is denied.

11

Case 2:10-cv-03536-AB   Document 16   Filed 01/18/12   Page 12 of 13

### ORDER

**AND NOW**, this _18th_ day of __JANUARY_ , 2012, it is **ORDERED** that Defendants'

Motion for Summary Judgment (ECF No. 10) is **DENIED**.


_S/ANITA B. BRODY_____
ANITA B. BRODY, J.


Copies **VIA ECF** on _____ to:     Copies **MAILED** on _____ to:

12

Case 2:10-cv-03536-AB   Document 16   Filed 01/18/12   Page 13 of 13

O:\ABB 2012\A - K\Braheny v. Commonwealth of PA SJ Explanation & Order.wpd